UNITED STATES DISTRICT COURT

for the

Central District of California

Western Division



| | | |
|---|---|---|
| Derek Jones<br>*Plaintiff*<br><br>-v-<br><br>Inner City Press Inc<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. **2:23-cv-09623-MCS(AJRx)**<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Derek Jones

*Plaintiff in Propur*

3705 West Farm Road

Lompoc, Santa Barbara County

CA 93436-2756

(310) 740-6555

djjones@ucla.edu

## I. INTRODUCTION

1. This action seeks redress for statements published by Defendant Inner City Press, Inc. concerning Plaintiff Derek Jones in an article dated November 10, 2022 entitled "White Collar Criminal Linked to Black Eye and Torn Clothes Is Confined, Derek Jones at Home" and published at www.innercitypress.com (the "Article").

2. Plaintiff alleges that the Article constitutes defamation per se under California law which is controlling in this case. In the alternative, Plaintiff alleges that the Article constitutes defamation and that its publication has caused Plaintiff to suffer actual and demonstrable damages. In support of these causes of action, Plaintiff alleges that the Article contains numerous statements that are false and unprivileged.

3. Plaintiff alleges that any privilege for a "fair and true report" of a judicial proceeding is not available here insofar as various statements in the Article are substantially inaccurate representations of the allegations discussed in the proceeding before Judge Loretta Preska in the Southern District of New York ("SDNY") on November 10, 2022 (the "Proceeding") and the statements suggest more far serious conduct than what was alleged, let alone what was found to have occurred.

4. Furthermore, Plaintiff alleges that the potential privilege for a "fair and true report" is not available here because the Article breaches a court order (i.e., to seal the record) or other requirements for confidentiality imposed by law

5. Plaintiff seeks compensatory and punitive damages in amounts to be determined by a jury. Plaintiff also seeks injunctive relief in the form of a retraction and clarification utilizing language to be approved by this Court.

## II. PARTIES

6. Plaintiff Derek Jones ("Jones"), an individual, resides in Santa Barbara County, California which is located in the Western Division of the Central District of California.

7. Defendant Inner City Press, Inc., apparently registered as Inner City Press/Community On the Move, Inc. ("ICP"), is a corporation which was incorporated in the State of New York and which has its principal place of business in New York, New York.

8. The identities and capacities of Co-Defendants DOE 1 - 100 (the "Doe Defendants") are presently unknown. They will be named in subsequent pleadings if and when they are determined to be necessary to the resolution of the instant action.

## III. JURISDICTION

9. Section 1332 of Title 28 of the United States Code states in relevant part "[t]he district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000... and is between -- (1) Citizens of different States..." Furthermore, 28 USC 1332 clarifies that "a corporation shall be deemed to be a citizen of every State... by which it has been incorporated and of the State... where it has its principal place of business..."

10. Jones alleges that the Central District of California, Western Division has jurisdiction based on, among other things, the diversity of citizenship of the parties (i.e., California and New York), the accessibility of the Article from practically anywhere in the United States, the Article's express and repeated references to Jones's location in California, and the concentration of the Article's impact in California.

11. Jones alleges that ICP's website -- apparently the primary means of publishing the Article -- can be accessed from anywhere in the US and from other nations as well. For example, immediately beneath the by-line of the Article, the following names appear: BBC, Guardian UK, Honduras, and ESPN. Jones is presently unaware of any affiliation between ICP and "BBC" (presumably the British Broadcasting Corporation), "Guardian UK" (presumably the British newspaper), "ESPN" (presumably the American sports broadcasting network), or the nation of Honduras. Jones alleges that ICP deliberately made references to the foregoing entities in the Article for the purpose of increasing its visibility throughout the US and even oversees -- i.e., to increase the likelihood that an online search for "BBC" would include the Article among search results.

12. The Article expressly references California twice -- in Paragraph 4 ("...Jones asked to appear remotely from California...") and in Paragraph 9 ("Criminal Justice Act funds will be used to fly Jones back to California...").

13. Jones alleges that the harms he has suffered as a result of the defamatory Article have been concentrated in California, where Jones has lived and worked continuously for the past 25 years and where Jones maintains the majority of his professional and personal relationships. These harms significantly exceed the jurisdictional threshold of $75,000.

## IV. FIRST CAUSE OF ACTION -- DEFAMATION PER SE

14. Jones refers to and incorporates each of the foregoing paragraphs as though fully set forth herein.

15. California Civil Code section 46(1), in relevant part(s), defines defamation per se as any "false and unprivileged publication...which: 1) Charges any person with crime, or having been indicted, convicted, or punished for crime; ... [or] 3) Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, professional,

trade, or business that has a natural tendency to lessen its profits..." The two categories referenced above -- implication of criminal conduct or injury of professional reputation -- are commonly regarded as "per se" instances of defamation because they are among the four categories identified in California Civil Code section 46(1) which, in order to be an actionable tort claim, do not require any showing that it "by natural consequence, causes actual damage" to a plaintiff.

16. Jones alleges that when a statement constitutes defamation per se, a prima facie case of harm is presumed without proof of harm beyond the occurrence of the contested statement.

17. Jones alleges that numerous statements contained in the Article, including its headline, falsely imply that Jones was charged with, convicted, or punished for criminal acts of domestic violence.

18. The headline for the Article states that Jones is "linked to black eye and torn clothes." In reality, the Proceeding did not include any allegation -- let alone a determination by the Court -- that Jones was the cause of a "black eye" or any such substantial injury. The Proceeding did include a reference to "torn clothes" but did not involve a determination that Jones had caused them or even contributed to their occurrence. Nonetheless, because the full headline reads "White Collar Criminal Linked\ to Black Eye and Torn Clothes Is Confined, Derek Jones at Home," Jones alleges that a reasonable reader of the headline will be led to believe -- falsely -- that Jones was determined by a Judge or some judicial apparatus to have caused a black eye and torn clothes and that he is being punished (i.e., "confined") as a direct result of such a determination of culpability.

19. Other examples of similarly defamatory statements are identified below in the order of their appearance in the Article.

20. In the first paragraph, the Article erroneously characterizes the Proceeding as "a remand or release tohome confinement proceeding." In reality, the Proceeding was a status conference -- an opportunity for the parties to provide an update to the Court regarding their efforts to narrow the universe of factual disputes that would, in turn, assist the Court in determining whether an evidentiary hearing would be required to resolve such disputes. Although wholly unproven allegations of domestic violence did become a part of the discussions before Judge Preska, the Article's mischaracterization of the Proceeding as something other than a status conference creates the false impression that a hearing had been convened to determine Jones's culpability with respect to allegations of domestic violence and whether he should be remanded into custody if culpability were established.

21. In reality, the thrust of the Government's allegations at the Proceeding were that Jones had pressured someone to submit a "character reference" to Judge Preska requesting leniency in the eventual sentencing. In the course of the Proceeding, the Government suggested to Judge Preska that Jones's conduct in this regard may have constituted "obstruction of justice" which could result in a sentencing enhancement (meaning, an increase in the "Offense Level" contemplated by the Guidelines promulgated by the United States Sentencing Commission). At no point was the Government accusing Jones of a crime of violence. And when Jones (through counsel) pointed out to Judge Preska that the alleged target of this pressure -- the same individual who submitted photographs -- had provided testimony confirming that she did not feel threatened by Jones, nor at risk of harm by Jones, the Government discontinued its efforts to convince Judge Preska that Jones had committed "obstruction of justice." To be clear, the Government did not accuse Jones of domestic violence, which (Jones is informed and believes) is not even within the purview of the United States Attorney's Office or any federal agency.

22. In the first paragraph, the Article references "photos of domestic violence." In reality, ICP did not even see any photographs that were submitted, and neither did Jones. Accordingly, even setting aside the fact that photographs were submitted under seal (presumably because of the sensitivity of the allegations), ICP was not in a position to identify what the photographs showed. ICP was certainly not in a position to state - that the photographs depicted one or more instances of domestic violence, or that the photographs depicted any injury caused by Jones's conduct.

23. In the third paragraph, the Article identifies Jones as "a lawyer." The case at issue in the Southern District of New York has nothing at all to do with Jones's former profession. Accordingly, Jones alleges that a reference to Jones as "a lawyer" in the context of the unfounded allegations of domestic abuse being peddled in the Article "[t]ends directly to injure him in respect to his... profession..." per the statute cited above.

24. Also in the third paragraph, the Article states that Jones "purported to withdraw his [guilty] plea" in response to the charges filed in 2021. According to Merriam-Webster's Collegiate Dictionary, Eleventh Edition, the verb "purport" means "to have the often specious appearance of being, intending, or claiming." The same dictionary defines the adjective "specious" as "having a false look of genuineness." The record in the SDNY criminal case reflects that Jones filed a motion to withdraw his guilty plea as authorized by Rule 11(d)(2) of the Federal Rules of Criminal Procedure (the "Rule 11 Motion"), and that such motion was supported by (among other things) an affidavit by Jones averring that his guilty plea was neither knowing nor voluntary because Jones's original counsel misinformed him that a evidentiary hearing to determine the amount of loss would be available as a matter of right. Although Judge Preska denied Jones's Rule 11 Motion, this issue (i.e., ineffective assistance of counsel) is presently before the Second Circuit Court of Appeals, as are Jones's conviction and sentence.

25. In the sixth paragraph, the Article states, "Reference was made to photos of physical abuse, torn clothes, and to another former Jones girlfriend who contacted the government about threats, as well as to a letter seeming (sic) obtained by coercion." By referencing "photos of physical abuse [and] torn clothes" the Article artfully implies that the photographs depicted the results of some act(s) of violence committed by Jones. The Article also falsely implies that Judge Preska -- whom the Article quoted in the fifth paragraph as having asked "What am I to do with these photos" -- made some determination that they were indeed photographs of one or more instances of "physical abuse" inflicted by Jones when in reality she made no such determination. In other words, the Article implies a causal connection between Jones and injuries allegedly depicted in photographs (which neither ICP nor Jones saw) when no such causal connection was established in the course of the November 10 status conference. Additionally, in the context of the sixth paragraph and the language which precedes it, by referring to "another former Jones girlfriend who contacted the government about threats," the Article falsely implies that allegations were presented about threats of violence. Specifically, the Government did not allege that Jones directed threats of violence towards anyone at all.

26. And although the Government initially alleged that a letter had been "seeming[ly] obtained by coercion" -- indeed, this was the thrust of their obstruction-of-justice argument -- the Government was confronted by language in the testimony of the alleged "victim" which clarified that at no point did she feel "threatened" by Jones. The Government ultimately abandoned their pursuit of an obstruction-of-justice enhancement in connection with Jones's sentencing. In any event, the Article failed to include any mention of this exculpatory evidence which directly contradicted the Government's allegation(s).

## V. SECOND CAUSE OF ACTION -- DEFAMATION

27. Jones refers to and incorporates each of the foregoing paragraphs as though fully set forth herein.

28. As noted above, California Civil Code section 46(1) defines defamation as any "false and unprivileged publication... which: ... 5) by natural consequence, causes actual damage" to a plaintiff.

29. Jones alleges that the Article constitutes a false and unprivileged publication which, by natural consequence, caused -- and indeed continues to cause -- actual damage to Jones, as more fully described below.

30. For example, in late November 2022, Jones was confronted by several parents of children who attended the local public middle school, which two of Jones's children attended at the time and where Jones was also coach of the Eighth Grade football team. These parents uniformly reported being "shocked" about the content of the Article, and

5


Jones was ostracized by certain groups of parents with whom he had historically enjoyed friendly and collegial relations.

31. Of even greater significance to Jones, in the wake of the Article's publication he was ostracized by professional colleagues and effectively forced to relinquish his roles as a "technical advisor" to a prominent national research university and as a mentor and judge for a national clean-energy coalition.

32. Jones further alleges that The State Bar of California can seize upon the content of the Article as a basis to deny Jones the ability to return to "active enrollment" status with the Bar.

33. Moreover, Jones alleges that any potential employer or business associate who has encountered (or will encounter) the Article will likely have greater reservations or reluctance about working with Jones than if the Article did not contain the defamatory statements summarized above.

34. Lastly, and perhaps most conspicuously, any potential romantic partner who has encountered (or will encounter) the Article will likely have concerns about her physical safety in a potential relationship with Jones as a direct result of the defamatory statements contained in the Article.

35. By way of clarification, Jones has never been charged with any crime of violence by any law enforcement agency. Jones is informed and believes and on this basis alleges that the defamatory statements contained in the Article are the only publication of any such allegations and that accordingly ICP is the only public-facing source of such disconcerting and misleading information.

## VI. THIRD CAUSE OF ACTION -- INJUNCTIVE RELIEF

36. Jones refers to and incorporates each of the foregoing paragraphs as though fully set forth herein.

37. The harm(s) to Jones associated with the tortious conduct described above in both the First and Second Causes of Action continues to be inflicted and exacerbated so long as the Article remains visible. Accordingly, Jones respectfully requests an order by this Court directing ICP to immediately remove the Article, utilizing all commercially reasonable efforts to remove the Article from internet archives.

38. Additionally, Jones respectfully requests an order by this Court directing ICP to publish a thorough retraction containing language approved by the Court which specifically identifies the nature and extent of statements which were likely to mislead a

reasonable reader, provided that such retraction does not constitute any further violation of Judge Preska's orders about sealing the record of the Proceeding.

## VII. PRAYER FOR RELIEF

Wherefore, Jones prays for judgment against Defendant(s) as follows:

1. For compensatory damages according to proof, in no event less than $500,000;

2. For punitive and exemplary damages, in no event less than $500,000;

3. For an order compelling Defendant(s) to remove the Article from ICP's website and, to the extent feasible, from internet archives;

4. For an order compelling Defendant(s) to publish a retraction concerning the defamatory statements contained in the Article, provided that such retraction does not violate any applicable SDNY orders or requirements for confidentiality;

5. For costs of suit incurred herein; and

6. For such other relief as the Court deems just and proper.

DATED: November 6, 2023

By: _____
Derek Jones, in Propia Persona

## VIII. DEMAND FOR JURY TRIAL

Plaintiff Derek Jones demands a trial by jury on all issues triable by a jury in the above-entitled action.

DATED: November 6, 2023

By: _____
Derek Jones, in Propia Persona